Joseph P. CONNORS, Sr., et
al., Plaintiffs,

v.

BARRICK GOLD EXPLORATION,
INC., Defendant.

Civ. A. No. 89–3166–GHR.

United States District Court,
District of Columbia.

Aug. 29, 1990.

David W. Allen, Gen. Counsel, Margaret M. Topps, Associate Gen. Counsel, Kenneth M. Johnson, Assistant Gen. Counsel, Robert Valer, Sr. Associate Counsel, UMWA Health and Retirement Funds, Washington, D.C., for plaintiffs.

David J. Laurent, Polito & Smock, P.C., Pittsburgh, Pa., Ellen Effros, Vorys, Sater, Seymour & Pease, Washington, D.C., for defendant.

## MEMORANDUM DECISION
## AND ORDER

REVERCOMB, District Judge.

The plaintiffs have filed the instant action against the defendant under 29 U.S.C. § 185 and 29 U.S.C. § 1132(e). The plaintiffs claim that Barrick Gold Exploration, Inc., a signatory to the National Bituminous Coal Wage Agreement of 1988, breached Article XX, Sections (i) and (j) of that Agreement and thereby violated 29 U.S.C. § 1145 by failing to pay certain amounts known as contractual withdrawal liability. The plaintiffs contend that when the defendant permanently ceased its operations in October 1988 it ceased to have an obligation to contribute to the trusts and it accordingly became subject to withdrawal liability. The defendant, on the other hand, contends that its obligation to contribute to the trusts does not cease until the expiration of the Agreement in 1993 and that assessment of withdrawal liability is premature. This matter is before the Court pursuant to the parties' cross-motions for summary judgment.

The plaintiffs have brought this action to collect delinquent contributions pursuant to section 515 of ERISA.[1] 29 U.S.C. § 1145. As the District of Columbia Circuit has noted, section 515 of ERISA "was adopted in order to ease the burden of uncertainty on the trustees of a pension trust by allowing them to rely upon the language of the [collective bargaining] agreement itself." *Bituminous Coal Operators Ass'n v. Connors*, 867 F.2d 625, 635 (D.C.Cir.1989). Accordingly, as all parties themselves agree, this Court considers only the provisions of the collective bargaining agreement if they are clear and unambiguous on their face. Any bargaining history or other documents which attempt to construe the meaning of

---

1. The Benefit Plan withdrawal liability provisions of the 1988 Wage Agreement expressly provide that:

   It is expressly understood that the Withdrawal Liability referred to herein is a contractual contribution obligation of the Employer, and is subject to the provisions of Section 515 of the Employee Retirement Security Act of 1974, as amended.

the 1988 Agreement "is irrelevant to the facial meaning of its terms," *id.* at 636, and reliance on such material would undermine section 515.

The 1988 Agreement's provisions concerning contractual withdrawal liability are set forth in Article XX, sections (i) and (j). Section (i) concerns withdrawal from the 1974 Benefit Plan and Trust and provides in pertinent part:

(1) In addition to any other obligations set forth in this Agreement, the Employers hereby agree that, in the event an individual Employer ceases, for whatever reason, to provide health benefits to pensioners (or their eligible beneficiaries) as set forth in Section (c)(3)(i) of this Article, ceases to have an obligation to provide such benefits, or ceases to have an obligation to contribute to the 1974 Benefit Trust, that Employer shall be considered to be in Withdrawal, and shall be liable to the 1974 Benefit Plan and Trust for Withdrawal Liability.

(2) Such Withdrawal Liability shall arise whether Withdrawal is caused by a cessation of covered operations by the Employer, the Employer's bankruptcy, failure of the Employer to execute a successor Agreement following the expiration of this or any successor Agreement, or for any other reason.

Section (j) concerns withdrawal from the 1950 Benefit Plan and Trust and provides in pertinent part:

(1) In addition to any other obligations set forth in this Agreement, the Employers hereby agree that, in the event that an individual Employer ceases, for whatever reason, to have an obligation to contribute to the 1950 Benefit Trust, the Employer shall be considered to be in Withdrawal, and shall be liable to the 1950 Benefit Plan and Trust for Withdrawal Liability.

(2) Such Withdrawal Liability shall arise whether a Withdrawal is caused by a cessation of covered operations by the Employer, the Employer's bankruptcy, failure of the Employer to execute a successor Agreement following the expira-

tion of this or any successor Agreement, or for any other reason.

The defendant contends that under the express terms of sections (i)(1) and (j)(1) that it has not exposed itself to Withdrawal Liability until it "ceases ... to have an obligation to contribute to" the trusts. Notwithstanding the facts that the defendant has permanently ceased operations and is no longer making contributions to the trusts, the defendant contends that it continues to have an obligation to contribute to the trust until the expiration of the Agreement in 1993. For example, the defendant puts forth the hypothetical that if it established another venture at another mine site it would be under an obligation to contribute to the trusts. Accordingly, the defendant argues, its obligation to contribute does not cease until 1993 when the Agreement expires.

This Court cannot accept the defendant's reasoning. First, the defendant's hypothetical that a mining concern may establish another venture at another site is not relevant to the issue of whether a permanent cessation of operations constitutes a withdrawal. That a mining company may engage in another venture simply suggests the obvious, namely, that the mining company has *not* permanently ceased its operations in which case withdrawal liability would not be assessed. If the trustees find that the possibility of a new venture by a mining company is genuine, and not merely speculation, then withdrawal liability will not be assessed. However, the plaintiffs in the instant case have concluded, and the defendant does not dispute, that the defendant *has* permanently ceased its operations, and the question accordingly begged is whether a permanent cessation of operations constitutes a withdrawal.

Another fundamental problem with the defendant's reasoning is that to argue that its withdrawal liability is dependent only on the expiration of the Agreement would negate sections (i)(2) and (j)(2) of any meaning which clearly contemplate different circumstances which can cause or constitute a withdrawal. Sections (i)(2) and (j)(2) identically provide:

(2) Such Withdrawal Liability shall arise whether a Withdrawal is *caused by a cessation of covered operations by the Employer,* the Employer's bankruptcy, failure of the Employer to execute a successor Agreement following the expiration of this or any successor Agreement, or for any other reason.

The fact that sections (i)(2) and (j)(2) are written with the disjunctive "or" provides that a "cessation of covered operations" is one of possibly many events which can cause withdrawal liability. For the defendant to contend that its obligation to contribute ceases—and hence its withdrawal liability triggered—only upon expiration of the 1988 Agreement would ignore all the other bases which sections (i)(2) and (j)(2) expressly contemplate as a cause of withdrawal liability.

The defendant does not dispute the amount of withdrawal liability for which it has been assessed.

Accordingly, it hereby is

ORDERED that the defendant's motion for summary judgment be, and the same hereby is, DENIED; and it is further

ORDERED that the plaintiffs' motion for summary judgment be, and the same hereby is, GRANTED; and it is further

ORDERED that the plaintiffs do have and recover from the defendant Barrick Gold Exploration, Inc., the sum of THREE MILLION EIGHT HUNDRED TWO THOUSAND FIFTEEN DOLLARS and TWENTY-TWO CENTS ($3,802,015.22) which includes:

1950 Benefit Plan and Trust:
| | |
|---|---:|
| Principal | $3,157,733.50 |
| Interest | 249,025.18 |
| Double Interest | 249,025.18 |
| | $3,655,783.86 |

1974 Benefit Plan and Trust:
| | |
|---|---:|
| Principal | $ 126,309.34 |
| Interest | 9,961.01 |
| Double Interest | 9,961.01 |
| | $ 146,231.36 |

and it is further

ORDERED that plaintiffs are awarded additional daily interest at the rate prescribed by law from the date of entry of judgment until the defendant makes payment on Benefit Plan Withdrawal Liability.